IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:14-CT-3182-FL

| | | |
|---|---|---|
| KOFFI GBIKPI, | ) | |
|       Plaintiff, | ) ) ) | |
| v. | ) ) | ORDER |
| KENNY ATKINSON, DOCTOR AMY ROSENTHAL, DOCTOR DAVID KAROL, and DOCTOR ALTON WILLIAMS,[1] | ) ) ) ) ) ) | |
|       Defendants. | ) | |

The matter now comes before the court on defendants' motion for summary judgment (DE 72) pursuant to Federal Rule of Civil Procedure 56(a) and defendants' motion to seal (DE 76). Plaintiff responded to defendants' motion for summary judgment, but did not oppose defendants' motion to seal. In this posture, the issues raised are ripe for adjudication. For the following reasons, the court grants defendants' motions.

### STATEMENT OF THE CASE

On July 11, 2014, plaintiff, a pretrial detainee, filed this civil rights action *pro se* pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971). Plaintiff alleges that defendants Kenny Atkinson ("Atkinson"), Dr. Amy Rosenthal ("Rosenthal"),

---

[1] The party plaintiff identified as Dr. Williams provided the court with his first name–Alton. The party plaintiff identified as Doctor Rosenthal also provided the court with her first name–Amy. The clerk of court is DIRECTED to amend the court's caption to reflect these changes.

Dr. David Karol ("Karol"), and Dr. Alton Williams ("Williams") acted with deliberate indifference to his serious medical needs in violation of the Fifth Amendment to the United States Constitution. Defendants subsequently moved to dismiss[2] the instant action arguing that plaintiff failed to exhaust his administrative remedies. The court denied defendants' motion on November 4, 2015.

Plaintiff subsequently filed an unopposed pleading captioned "Motion to Correct Section" requesting that his action be construed as one pursuant to 28 U.S.C. § 1331. Plaintiff next filed a motion to initiate discovery. Defendants responded to plaintiff's motion to initiate discovery, and asked that the court's discovery deadline be stayed until April 4, 2016, in order to provide defendants the opportunity to file dispositive motions raising the affirmative defense of qualified immunity. On March 9, 2016, the court denied as moot plaintiff's "Motion to Correct Section," granted defendants' request to stay discovery, and denied without prejudice plaintiff's motion to initiate discovery. Plaintiff then filed a pleading which the court construed as a motion for an extension of time to respond to defendants' discovery requests, which the court granted. Because the April 4, 2016, deadline for filing dispositive motions passed without the filing of any dispositive motion, the court, additionally, lifted the stay of discovery and imposed new discovery and dispositive motion deadlines.

On April 18, 2016, defendants filed a second motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), which was fully briefed. The court subsequently notified the parties of its intent to construe defendants' motion as a motion for summary judgment pursuant to Rule 56(a), and granted defendants permission to seal

---

[2] The court construed plaintiff's motion as one for summary judgment pursuant to Federal Rule of Civil Procedure 56(a).

docket entries 63-65. The court also denied plaintiff's motion to strike and granted in part and denied in part defendants' motion for summary judgment. Specifically, the court granted defendants' motion for summary judgment as to plaintiff's official capacity claims requesting monetary damages, but denied the remainder of defendants' motion. The court entered new discovery and dispositive motion deadlines.

On March 15, 2017, defendants filed the instant motion for summary judgment arguing that plaintiff failed to establish a constitutional violation. Alternatively, defendants assert the affirmative defense of qualified immunity. As part of their motion, defendants submitted a Statement of No Material Facts as well as an Appendix which included the following: declarations from Ronald Dorman,[3] as well as defendants Atkinson, Rosenthal, Karol, and Williams; documents related to plaintiff's pending immigration proceedings; and portions of plaintiff's medical records. The motion for summary judgment was fully briefed. On the same date defendants filed their motion for summary judgment, defendants moved to seal the contents of their Appendix. Plaintiff then responded to defendants' motion for summary judgment and attached his personal declaration. After obtaining permission from the court, defendants filed a reply on May 8, 2017, and plaintiff filed a sur-reply on May 26, 2017.

## STATEMENT OF UNDISPUTED FACTS

The undisputed facts are as follows. Plaintiff's complaint relates to the medical and psychiatric care he received following his March 26, 2013, committal to the Federal Medical Center in Butner, North Carolina ("Butner") for the purpose of undergoing an evaluation to determine

---

[3] Ronald Dorman is not a party to this action. He is employed as a deportation officer with the United States Department of Homeland Security. (Dorman Decl. ¶ 1).

whether he was competent to stand trial for criminal charges in the United States District Court for the Middle District of Florida. (Karol Decl. ¶ 6; Williams Decl. ¶ 3); see also, 18 U.S.C. § 4241(d)). On April 9, 2013, Dr. Kwana Hayes, the psychiatrist who conducted plaintiff's court-ordered forensic examination, examined plaintiff. (Karol Decl. ¶ 8 and Attach. I, p. 8). Dr. Hayes noted that plaintiff complained of atypical auditory hallucinations, and made statements such as the following:

> I keep hearing a noisy sound through my ear. I also getting electrical fire shock through my ear every time I want to talk. When people talking that making eco sound. So far that getting worse and is difficult for me to concentred doing one thing or another. This affecting my thinking process as well. Without any help, the going to be difficult for me to work as a pastor counselor.

(Id.) (no alterations to the original). Dr. Hayes suspected that plaintiff was experiencing tinnitus (a ringing or buzzing in the ears) as a side effect to psychotropic medications. (Id.) Based upon her observations, Dr. Hayes ordered that plaintiff's prescribed Risperidone be tapered. (Id.)

Plaintiff then attended an appointment with defendant Karol, on April 15, 2013, at which time plaintiff complained of electric shock-like pain in both jaws and his neck, as well as noise in both ears resembling "radio static." (Id. ¶ 9 and Attach. 1, p. 10). Plaintiff denied any hearing loss at that appointment. (Id. Attach. I, pp. 10, 13). Based upon plaintiff's representations, defendant Karol suspected a possible diagnosis of Meniere's disease (involving tinnitus, vertigo, and ear pain), and referred plaintiff for a hearing test. (Id. p. 13). After receiving notice that plaintiff's hearing screening results were abnormal, Karol referred plaintiff for an audiology evaluation. (Id. ¶ 11 Attach. I, p. 18). Karol additionally prescribed a prednisone injection to treat plaintiff's symptoms of tinnitus. (Id. p. 16). After following up with plaintiff the next day and finding no reports of improvement, Karol prescribed a prednisone taper for a period of two weeks to treat plaintiff's

4

tinnitus symptoms. (Id. p. 17). Karol also submitted a consultation request for plaintiff to be seen by an otolaryngologist ("ENT") for evaluation of his tinnitus, vertigo, and jaw claudication. (Id.)

On May 20, 2013, plaintiff saw an ENT. (Id. ¶ 15 and Attach. I, p. 28). The ENT diagnosed plaintiff with tinnitus and possible vestibular dysfunction. (Id.) The ENT noted the possibility that plaintiff also had high-frequency sensorineural hearing loss. (Id.) The ENT recommended that plaintiff have a vestibulonystagmogram ("VNG") or electronystagmogram ("ENG") test for further evaluation of plaintiff's vestibular system. (Id.) Finally, the ENT recommended a baseline audiological evaluation. (Id.) After later reviewing the notes from plaintiff's ENT consultation, Karol could not determine whether the ENT considered a possible diagnosis of Meniere's disease and determined that it may be necessary to discuss plaintiff's case with Butner's contract audiologist. (Id. ¶ 17 and Attach. I, p. 28). Karol also referred plaintiff for the recommended VNG and ENG tests and renewed plaintiff's prescriptions for treatment of Meniere's disease. (Id. pp. 29, 31).

On July 19, 2013, Dr. Hayes examined plaintiff and noted that plaintiff was still experiencing a lot of noise in his head, including voices. (Id. p. 33). Dr. Hayes later noted that plaintiff's [c]ase was complicated by probable exaggeration of symptoms due to the medico-legal context." (Id. p. 34). Then, on August 6, 2013, plaintiff attended an appointment with Karol during which plaintiff complained of "jaw tightening," radio static in his head, and dizziness. (Id. ¶ 20 and Attach. I, p. 39). On August 15, 2013, an audiologist evaluated plaintiff and recommended that plaintiff have a consultation with an ENT for possible treatment of his Meniere's disease-related symptoms of vertigo and tinnitus. (Id. ¶ 22).

5

On August 16, 2013, plaintiff saw Dr. Hayes as part of the competency evaluation process. (Id. ¶ 23 and Attach. I, p. 41). Dr. Hayes noted that plaintiff's psychological testing results were consistent with malingering, and that plaintiff's medical work-up had been unremarkable.[4] (Id.) Then, on September 13, 2013, Dr. Hayes and Dr. Pyant, a Butner psychologist, completed plaintiff's court-ordered forensic evaluation, and reported that plaintiff was assigned the principal diagnosis of malingering. ((DE 64), pp. 20, 23). Drs. Hayes and Pyant opined that plaintiff was competent to stand trial. (Id.) Plaintiff, however, remained at Butner for medical treatment related to his hearing issues, and began seeing defendant Williams, a psychiatrist, in December 2013. (Williams Decl. ¶ 4).

Subsequent to the completion of his forensic evaluation, plaintiff continued to receive treatment for his hearing issues and Karol met with plaintiff to review the results of plaintiff's ENG. (Karol Decl. ¶ 25, and Attach. I, p. p. 46). Based upon the ENG results, Karol referred plaintiff for an MRI of plaintiff's brain and brain stem for evaluation of possible lesions which Karol believed to be a potential cause of plaintiff's symptoms. (Id.) Karol also again referred plaintiff to an ENT for re-evaluation and to determine whether plaintiff had Meniere's disease. (Id.) Plaintiff attended his second evaluation with the ENT on October 28, 2013. (Id. ¶ 27 and Attach. I, p. 49). The ENT requested that a repeat audiogram (hearing test) be performed to determine any interval changes to plaintiff's hearing level. (Id.) Karol, thereafter, reviewed the ENT's note, referred plaintiff for a repeat audiogram, and submitted a consultation request for plaintiff to return to the ENT after the repeat audiogram was performed. (Id. p. 50).

---

[4] During this time period, Karol reviewed a report from a previously conducted neurology examination which indicated that the neurologist believed plaintiff's symptoms to be psychogenic (having a psychological and not physical origin). (Id. p. 42).

On December 23, 2013, plaintiff saw defendant Williams and complained that he had been experiencing some depression and had been hearing some voices. (Williams Decl. ¶ 6 and Attach. 1). During the appointment, plaintiff expressed a desire to resume taking the drug Risperdal because it previously had helped decrease the voices plaintiff heard. (Id.) Williams then advised plaintiff that he would have to wait to re-start Risperdal until it could be determined whether taking Risperdal would interfere with plaintiff's hearing-related complaints. (Id.) Williams renewed plaintiff's prescription for sertraline (Zoloft), which was prescribed to treat plaintiff's depression, in January and February 2013. (Id. ¶¶ 7,9 and Attach. 2 and 3).

Based upon the audiologist's finding of mild to moderate sensorineural hearing loss in plaintiff's right ear and a profound sensorineural hearing loss in his left ear, the audiologist recommended that plaintiff return to the ENT for further treatment and that plaintiff return to audiology for hearing aid recommendations if he was approved to receive hearing aids. (Karol Decl. ¶ 28). On February 10, 2014, plaintiff again saw the ENT which determined that plaintiff may be a candidate for a hearing aid for his right ear. (Karol Decl. ¶ 31 and Attach. I, pp. 55-56). Karol then submitted a consultation request for plaintiff to have a hearing aid evaluation. (Id. ¶ 32 and Attach. I, p. 51).

On February 14, 2014, plaintiff again asked Williams to restart antipsychotic medication in order to help control the voices in plaintiff's head. (Williams Decl. ¶ 9 and Attach. 4). Williams assessed plaintiff as malingering, and prescribed Risperidone (Risperdal) for plaintiff's depression and continued plaintiff's prescription for Zoloft. (Id.) Ten days later, plaintiff informed Williams that his ears made it difficult for him to focus on his federal criminal action. (Id. ¶ 10 and Attach.

7

5). Williams, in turn, reviewed plaintiff's hemoglobin A1C level,[5] and noted that it was elevated, but that this was unchanged from March of 2013. (Id.) Williams also discussed with plaintiff the option of switching to a different medication in order to lower plaintiff's risk of blood sugar elevation, but plaintiff did not want to switch medications because the other medications had higher risk of movement disorders. (Id.) Plaintiff, instead, expressed a desire to continue with Risperidone. (Id.) Williams ultimately ordered that plaintiff's Risperidone be increased at bedtime and that plaintiff continue taking Zoloft. (Id.)

Williams again saw plaintiff on March 10, 2014, as part of plaintiff's treatment team meeting. (Id. ¶ 13 and Attach. 8). Plaintiff was very critical of the medical care he was receiving at Butner, and Williams encouraged plaintiff to submit an "Inmate Request to Staff," also known as a "cop out" to voice his concerns. (Id.) Williams later met with plaintiff to discuss an "Inmate Request to Staff" that plaintiff had submitted in which he complained of the side effects he experienced from his medications. (Id. ¶ 16 and Attach. 10). Plaintiff, additionally, complained that the ringing in his ears caused him to be depressed. (Id.) In response, Williams offered to decrease or discontinue one of plaintiff's medications to see if that alleviated plaintiff's side-effects, but plaintiff declined. (Id.) Williams renewed plaintiff's prescriptions for Zoloft and Risperidone in May 2014. (Id. ¶ 17 and Attach. 11).

In the interim, an audiologist evaluated plaintiff, and reported further decreased hearing in plaintiff's right ear, and increased tinnitus over the past several months. (Karol Decl. ¶ 34 and Attach. I, pp. 55-56). Plaintiff also began the process for the fitting of a hearing aid for his right ear,

---

[5] Williams monitored plaintiff's hemoglobin A1C level because one side effect of the medication Risperidone is elevated blood-sugar, which could lead to diabetes. (Williams Decl. ¶ 10 and Attach. 5).

and the hearing aid authorization was approved on April 21, 2014. (Id. ¶ 36 and Attach. I, p. 62, 65). On May 14, 2014, the audiology department completed plaintiff's hearing aid order form. (Karol Decl. Attach. I, p. 67).

On June 11, 2014, Williams saw plaintiff, and plaintiff reported feeling like the facility and the government were trying to kill him with "electromagnetic waves." (Williams Decl. ¶ 19 and Attach. 13). Williams again saw plaintiff on June 19, 2014, in a Butner hallway, and noted that plaintiff demonstrated no abnormal movements or difficulties with communicating or hearing. (Id. ¶ 20 and Attach. 14). Williams renewed plaintiff's prescriptions for Zoloft and Risperidone. (Id.) On June 24, 2014, plaintiff complained to Williams that plaintiff's hearing was affecting his concentration. (Id. ¶ 22 and Attach. 16). Williams instructed plaintiff to assess whether there were any changes in his condition once his hearing aid arrived. (Id.) Williams also noted that plaintiff's behaviors were most consistent with malingering because plaintiff's complaints were in contrast to his ability to organize letters, report symptoms, and his appearance when interviewed. (Id.)

On August 7, 2014, Williams met with plaintiff, and plaintiff reported issues with spots on his torso and dizziness. (Id. ¶ 26 and Attach. 20). Williams then suggested that plaintiff could decrease or stop one of plaintiff's medications to see if his condition improved, and plaintiff agreed to decrease his Risperidone. (Id.) Then, on August 11, 2014, plaintiff received a hearing aid for his right ear. (Karol Decl. ¶ 38 and Attach. I, p. 69). The next day, plaintiff was seen by a medical provider who noted that plaintiff was not wearing his hearing aid, and that plaintiff did not have any difficulty hearing the provider. (Id. ¶ 39 and Attach. I, p. 77). On August 18, 2014, plaintiff was discharged and transferred from Butner because his competency evaluation was complete and he had completed treatment for his hearing-related issues. (Id. ¶ 41). On October 1, 2015, plaintiff was

9

sentenced to time-served in his federal criminal action. See United States v. Gbikpi, No. 8:12-cr-259-T-17MAP (M.D. Fl. Oct. 1, 2015).

## DISCUSSION

A.   Motion to Seal

Defendants moved to seal the Appendix (DE 75) they submitted in support of their motion for summary judgment. The material defendants seek to seal contain both references to and copies of plaintiff's mental health records. The court has considered the motion under the governing standard, and determines that the exhibits should be sealed. See, e.g., Doe v. Pub. Citizen, 749 F.3d 246, 271–73 (4th Cir. 2014). Thus, defendants' motion to seal is GRANTED, and the clerk of court is DIRECTED to maintain defendants' Appendix (DE 75), attached to defendants' motion for summary judgment, under seal.

B.   Summary Judgment

1.   Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

2. Analysis

Defendants raise the affirmative defense of qualified immunity against plaintiff's Bivens action. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009). The court first examines plaintiff's claims in turn to determine whether plaintiff establishes a constitutional violation.

Plaintiff alleges that defendants acted with deliberate indifference to his serious medical needs in violation of the Fifth Amendment[6] in connection with his medical and psychiatric care. "In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The first prong is an objective one–the prisoner must show that "the deprivation of [a] basic human need was *objectively* sufficiently serious"–and the second prong is subjective–the prisoner must show that "*subjectively*

---

[6] Plaintiff was a pretrial detainee at the time he filed this action. Confinement conditions of pretrial detainees are to be evaluated under the Due Process Clause of the Fifth Amendment, rather than under the Eighth Amendment. Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979). However, as a practical matter, the contours of the Due Process Clause are coextensive with the substantive constitutional principles applied by the Eighth Amendment to convicted inmates. See Hill v. Nicodemus, 979 F.2d 987, 991-92 (4th Cir. 1992). Accordingly, plaintiff's Fifth Amendment Due Process claims will be analyzed under the Eighth Amendment.

11

the officials act[ed] with a sufficiently culpable state of mind." See Strickler, 989 F.2d at 1379 (internal quotations omitted).

"Deliberate indifference entails something more than mere negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." See Farmer v. Brennan, 511 U.S. 825, 835 (1994). It requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm. Id. at 837; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995). A disagreement between an inmate and a physician regarding the appropriate form of treatment does not state a claim for deliberate indifference. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Likewise, mere negligence or malpractice in diagnosis or treatment does not state a constitutional claim. Estelle v. Gamble, 429 U.S. 97, 105-106 (1976); Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998).

  a.  Defendant Karol

Defendant Karol was responsible for treating plaintiff's medical needs at Butner. Plaintiff alleges that defendant Karol acted with deliberate indifference to plaintiff's complaints of tinnitus and hearing loss. The record belies plaintiff's allegations. Specifically, Karol examined plaintiff on a regular basis, prescribed plaintiff medication to treat his tinnitus, and referred plaintiff to an audiologist, an ENT, and a neurologist. (Id. ¶¶ 4, 9, 10, 15, 21, 22, 25-27 and Attach. I, pp. 13, 17, 45, 46, 50). Defendant Karol, in turn, followed through with the various specialist's recommendations and facilitated the fitting and eventual receipt of a hearing aid for plaintiff's right ear on August 11, 2014. (Id. ¶¶ 32, 36, 38 and Attach. I, pp. 62-66, 70, 77). Plaintiff's disagreement with Karol's decisions with respect to plaintiff's treatment does not rise to a level of deliberate indifference. See Johnson, 145 F.3d at 169; Jackson v. Lightsey, 775 F.3d 170, 178-179 (4th Cir.

2014) (stating that disagreements between prison physician and pre-incarceration cardiologist as to diagnosis and treatment did not support a claim for deliberate indifference); see also, Cochran v. Lindzau, No. 5:15-CT-3138-BO, 2015 WL 9049810, at *2 (E.D.N.C. Dec. 16, 2015) ("Disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment.") (citation omitted).

To the extent plaintiff alleges that the treatment he received from Karol was not effective, it does not give rise to a constitutional violation. See, e.g., Russell, 528 F.2d at 319; Johnson, 145 F.3d at 167 (finding that negligent acts are not sufficient to establish a constitutional violation). As for plaintiff's allegations that Karol delayed in providing plaintiff any medical treatment, plaintiff has not presented any evidence to establish that he suffered any "substantial harm" as a result of any alleged delay, nor produced evidence that any delay by Karol exacerbated plaintiff's injury or unnecessarily prolonged plaintiff's pain. See Abraham v. McDonald, 493 F. App'x 465, 466 (4th Cir. 2012) ("A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain.") (citation omitted). Based upon the foregoing, plaintiff failed to establish that defendant Karol acted with deliberate indifference to plaintiff's tinnitus and bilateral sensorineural hearing loss. Thus, plaintiff failed to establish a constitutional violation with respect to defendant Karol, and Karol is entitled to qualified immunity.

  b.  Defendant Williams

Plaintiff alleges that defendant Williams acted with deliberate indifference to plaintiff's psychiatric care at Butner. The record reflects that Williams, a psychiatrist, prescribed plaintiff Zoloft and Risperidone to treat plaintiff's depression, monitored plaintiff while he was taking the

medications, and considered the effects the medications would have on plaintiff's hearing issues. (Williams Decl. ¶¶ 16-19 and Attachs. 12, 15, 16, 19). As stated, plaintiff's disagreement with defendant Williams' medical treatment fails to establish an Eighth Amendment claim. Russell, 528 F.2d at 319. To the extent plaintiff asserts that Williams acted with deliberate indifference by switching plaintiff's Risperdal prescription to Risperidone, Williams attests that Risperdal and Risperidone contain the same chemical. (Williams Decl. ¶ 9 and Reply p. 7); United States v. Watson, 793 F.3d 416, 421 n. 3 (4th Cir. 2015) (noting that Risperidone is the generic form of Risperdal). Simply put, plaintiff has presented no evidence to suggest that Williams knew of and disregarded plaintiff's medical condition or any risk of harm. Thus, plaintiff failed to establish a constitutional violation with respect to defendant Williams, and Williams is entitled to qualified immunity.

        c.        Defendants Rosenthal and Atkinson

Plaintiff's claims against defendants Rosenthal and Atkinson are predicated upon a theory of supervisor liability. Given the fact that there is no underlying constitutional violation, plaintiff's supervisor liability claims lack merit. See Hinkle v. City of Clarksburg, W. Va., 81 F.3d 416, 420 (4th Cir. 1996) (holding that absent an underlying constitutional violation, no § 1983 liability attaches to a supervisor); Thomas v. Holly, 533 F. App'x 208, 221 (4th Cir. 2013) (noting that a finding of bystander liability for a defendant required a finding of excessive force by another defendant).

**CONCLUSION**

For the foregoing reasons, the court orders as follows:

1) Defendants' motion to seal (DE 76) is GRANTED and the clerk of court is DIRECTED to maintain defendants' Appendix (DE 75), attached to defendants' motion for summary judgment, under seal.

2) Defendants' motion for summary judgment (DE 72) is GRANTED;

3) The clerk is DIRECTED to amend the court's caption to reflect that the party plaintiff identified as Dr. Williams is Dr. Alton Williams and the party plaintiff identified as Dr. Rosenthal is Amy Rosenthal;

4) The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 12th day of June, 2017.

_____
LOUISE W. FLANAGAN
United States District Judge